WALDEN, Judge
(dissenting):
Does the record affirmatively reflect that the defendant’s guilty plea was properly made? Was it entered freely, voluntarily and without misapprehension, persuasion, promises, inadvertence, ignorance or fear?
The issue is close. From the totality of the circumstances I can not help but believe that the defendant was in fact mislead and uninformed in consigning himself to prison without a trial.
It is to be remembered that a resolution here in favor of defendant does not exonerate him — it merely gives him a chance to be tried in court according to law. And if a jury finds him not guilty based on the proofs, he will be free — otherwise not.
The defendant here entered a plea of guilty to manslaughter. He is an indigent Puerto Rican who understands no English and is possessed of a fourth grade education. An information charging murder had been filed against defendant and “his woman,” one Epifanía Rodriguez. No attorney from the Public Defender’s office ever interviewed or corresponded with the defendant while he was in jail.
When the lower court granted a motion of severance to Epifanía Rodriquez the defendant withdrew his plea of not guilty to murder and entered a plea of guilty to manslaughter. The defendant now claims that the plea of guilty was not voluntary, nor did he completely understand what would happen to him.
Before his plea of guilty was made conversations via an interpreter took place between defendant and the Public Defender in a room adjoining the courtroom. The Public Defender used an interpreter which was not his usual interpreter. It is indicated in the transcript that the Public Defender had more confidence in his regular interpreter than in the one he used.
The defendant testified that the Public Defender told him that if he plead guilty to manslaughter he would receive a reduced sentence of three years and that the State would let the woman go. It is clear that the defendant was extremely concerned about this woman. The Public Defender did indicate that he had spoken to the defendant about the disposition of the case against the woman, and that defendant was extremely apprehensive about that consideration. The Public Defender did say flatly that he did not think the defendant could get the feeling that he was doing anything for the woman in connection with his plea. After discovering that he had been sentenced to fifteen years, defendant was “shocked.” The Public Defender himself testified that the defendant’s behavior after sentencing was “astonishing.”
The trial court colloquy reveals that defendant was asked by the court if he understood that the charge was a felony punishable by imprisonment in a state penitentiary and if he was pleading guilty because he was guilty, and had not been threatened nor had any promise of reward made to him. This information can be found in the minutes of the Criminal Court of Record in and for Palm Beach County, page 7 of the record on appeal. It does not appear that the defendant was informed of the maximum and minimum sentences possible.
It is interesting to note that as a result of Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L.Ed.2d 274 (1969), it was proposed that Rule 11 of the Federal Rules of Criminal Procedure be changed to pro *231 vide that the defendant be told the mandatory minimum punishment and the maximum possible punishment provided by the statute defining the defense to which the plea is offered. It seems important to the writer that this information was not given to the defendant when interrogated by the court concerning his plea.
Summing up it is my distinct conviction that this defendant’s plea was not properly made and it does not affirmatively appear to the contrary. Further, we know that even a slight undue motivation will invalidate a guilty plea. Bartz v. State, 221 So.2d 7 (2nd D.C.A.Fla.1969); Reddick v. State, 190 So.2d 340 (2nd D.C.A.Fla.1966).
I would reverse and remand with instructions to allow defendant to withdraw his plea and proceed to trial.
For the above reasons I respectfully dissent.